# LEWIS *v.* CRONEMEYER.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. Where the application of one of the parties to an interference was filed after the grant of a patent to his adversary, the burden of proof is on him to an unusual degree.

2. In an interference proceeding between applicants and a patentee, tests of devices by the former embodying the invention of the issue, claimed

to have constituted reduction to practice, must be shown to have been successful beyond a reasonable doubt. (Following *Guilbert* v. *Killinger*, 13 App. D. C. 108; *Nielson* v. *Bradshaw*, 16 App. D. C. 96; *Kelly* v. *Fynn*, 16 App. D. C. 577; *Meyer* v. *Sarfert*, 21 App. D. C. 28; and *Dashiel* v. *Tasker*, 21 App. D. C. 64.)

3. Lack of diligence is shown by a party to an interference, where he took no steps to file his application for more than two years after a test which he claims was an actual reduction to practice, did not file his application until nine months thereafter, and then only after he had heard of a patent granted his adversary.

No. 407.   Submitted January 15, 1907.   Decided March 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Harry Frease* for the appellants.

*Messrs. Bakewell & Byrnes* for the appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

The three tribunals of the Patent Office concurred in awarding priority of invention in this case to Ernest L. Cronemeyer, and we must affirm the decision of the Commissioner of Patents appealed from.   Such unanimity relieves us from a prolonged discussion of the case.   The issues are:

"1. A catcher for tinning machines, comprising a pair of positively-driven rollers having gripping portions provided with soft material to prevent marking of the plates.

"2. A plate-catcher having positively-driven catcher-rolls, said rolls having separated registering gripping portions of soft material.

"3. A plate-catcher having a pair of driven rolls with soft gripping portions, a deflector above them, a raised support below the deflector, and an inclined chute for the sheets as they leave the deflector.

"4. In a plate-catcher a pair of driven feed-rollers above the tinning machine, and having soft gripping portions, and means for yieldingly pressing at least one of said rollers toward the other."

It thus appears that the invention in issue is a catcher for tinning machines. It is the office of this catcher to take hold of the tin plate when it emerges from the rolls of the tinning machine, and discharge it from the machine. Cronemeyer is the senior party, to whom was granted a patent six months before the application of William Price Lewis and Thomas Reese Williams, the appellants, was filed. In this interference, therefore, the burden of proof is upon them in an unusual degree. Mechanical catchers for tinning machines were in use before Cronemeyer filed his application. In February, 1899, a patent was issued to Burson for a metal plate-catcher, which consisted of two steel rolls similar to the tinning rolls; and, as the tin plate emerged from the tinning rolls, Burson's machine caught it up by these steel rolls and discharged it from the machine.

In the invention in issue instead of the rolls of Burson's patent, shafts are employed, having a series of pairs of disks between which the tin-plate sheet is caught when it emerges from the tinning rolls. In Cronemeyer's patent these disks are formed of a number of linen disks clamped between sleeves on the shaft. In the application of Lewis and Williams it appears that the disks are made of tin and clamped in position on the shafts by threaded sleeves, or cast on the shaft. Burson's steel rolls, mounted over a tinning bath, successfully seized and discharged freshly tinned plates; but in practice it was found that these steel rolls greatly marred the polished surface of the plates. It was the purpose of the invention of each of the parties to produce a catcher which would receive and discharge plates without marking or defacing their polished surfaces. Therefore the important feature of the invention of this issue is the "gripping portions" on the feed rollers, "provided with soft material to prevent marking of the plate." Expedients for guiding the plates as they are discharged from the rollers are incidental in the more limited counts of the issue.

Cronemeyer sought to avoid the defect in Burson's catcher by the use of the linen disks described. Lewis and Williams tried to avoid Burson's difficulty by the use of tin disks, which they claim, are relatively soft, and at least not hard enough to mark the freshly tinned surfaces of the plates.

Lewis was the superintendent, and Williams was a foreman, of the Morewood works of the American Tin Plate Company, at Gas City, Indiana. They jointly conceived this invention before July 1, 1902, and about that date they disclosed it to Smith and Hook, who, under the instruction of Lewis and Williams, built a test machine, which when completed was tested in the tin house of the Morewood works on August 23, 1902, in the presence of four or five persons. Because they wished to keep secret their invention, after a few hours' testing Lewis and Williams had this machine broken up. Soon after, Williams departed from Gas City, and became a superintendent for the Carnahan Tin Plate & Sheet Company, at Canton, Ohio. Lewis joined him there in the same employment in July, 1903. Lewis and Williams discussed with Blecker, the secretary of the company, the merits of their tin-disk catcher, and soon completed and put into operation a catcher, about the 1st of October, 1903. It remained in use until the middle of November following. Its use was discontinued for a long time, and it was again in operation in September, 1904.

It is clear that Lewis and Williams were the first to conceive the invention in issue. All the tribunals of the Patent Office agree that the construction and testing of the machine at Gas City was not a reduction to practice of the invention in issue. As we have said, the Burson catcher with its steel rolls successfully caught the plate, but it marred them in so doing. Lewis and Williams testify, and they are corroborated by Smith and Hook, that a number of sheets were run through the machine at Gas City, and there were no marks upon the plates. Thornburg says these plates had a little oil but no marks on them. Blackburn says the plates showed some abrasion, but after they passed through the dusting and polishing machines this abrasion was not noticeable.

At the time the appellants secretly tested their machine at Gas City, the plant was shut down, and there is no satisfactory evidence that the particular tin pot on which the new catcher was mounted contained molten tin. On the contrary, the evidence is most persuasive that tin plates no longer fresh were used in the experiment, and there is no evidence that the sheets used were retinned at the time. This experiment continued only for an hour or two, and none of these sheets were preserved. The positive opinions of witnesses that these sheets showed no marks after passing through the cleaning and polishing machines would be more weighty had the test not occurred two days after the tin house had shut down for the season, at which time the tin ordinarily would have been removed from the pot. Undue importance is given to the statement that the light in the tin house was poor. It was the building in which tin plates were dipped, and we infer there was light enough from the windows for the business therein conducted. This machine at Gas City was tested and dismantled on August 23, 1902. We are not satisfied beyond a reasonable doubt that this test was a successful reduction to practice.

The machine built in the Carnahan plant, at Canton, was installed on the 5th of October, 1903, and taken off on November 18, 1903. Williams says none of the sheets run through this catcher were marked, and Thornburg says it worked well. No plates then produced appear among the exhibits. Lewis testifies that another machine was built and put in operation in the Carnahan works on February 14, 1905, and this machine was later made to conform to the construction of the first machine tested at Gas City, and he insists that the machine worked as well after this change as before. A series of plates caught up by this machine were exhibited, and Lewis admits that some of them were marked, but not marked to such an extent "that an assorter could turn them back as wasters or menders." When this machine was tested before witnesses on both sides who appear in this case, it required frequent adjustment in order that the disks might be close enough together to prevent the sheets from slipping, and yet far enough apart to avoid denting the

sheets, which often vary in thickness. Kimball, an intelligent witness for Cronemeyer, says the machine was adjusted every few minutes, which indicated that the machine did not successfully do its work. Lewis and Williams occupied important positions in the Carnahan plant, and it is significant that after their second machine had been in operation for six or seven weeks, in the fall of 1903, it was not used again until September, 1904. The applicants say it was taken off for repairs, but the repairs necessary, Thornburg says, consumed only one day's work; and it is significant that it was not restored to use until after these applicants had heard that the patent had been granted Cronemeyer, and that his invention was in use; and at no time does it appear that Lewis and Williams made use of more than one of their catchers at the same time upon tinning pots in the Carnahan establishment. The Examiners-in-Chief fairly infer that the experimental stage of the invention had not been passed.

Nor were Lewis and Williams diligent in filing their application for a patent. Mr. Frease, who so well presented appellants' case in this court, says he was consulted about the 1st of November, 1903, and prepared the papers in January, following; that Secretary Blecker, who had arranged to pay the fees, held back, and the matter was taken up in July, 1904, and the first application filed August 9, 1904; and, though it is true the attorney says the appellants applied to him in June, 1904, to know why the application had not been filed, this interview did not occur until after they had heard of Cronemeyer's patent. We conclude that Lewis and Williams have failed to prove beyond a reasonable doubt that the tests of their catchers in 1902 and 1903 were so successful as to constitute a reduction to practice of the invention. They are the junior parties, and they were joint inventors, but they must in this case rely upon the success of the tests just mentioned to establish priority over Cronemeyer, the patentee, and these tests are not convincing. *Guilbert* v. *Killinger*, 13 App. D. C. 108; *Meyer* v. *Sarfelt*, 21 App. D. C. 28; *Dashiell* v. *Tasker*, 21 App. D. C. 68; *Nielson* v. *Bradshaw*, 16 App. D. C. 96; *Kelly* v. *Fynn*, 16 App. D. C. 577.

It was during this period that Cronemeyer appeared and re-duced the invention to practice.

Cronemeyer testifies that in November, 1902, he conceived the idea of a catcher having gripping rolls for use with a tin-plate machine. In December of 1903 he experimented with rolls having soft gripping portions; he tried rubber and asbestos, and by the first week in September of that year he used rolls the gripping portions of which consisted of linen disks. Three witnesses testify that a catcher having linen or cotton disks was in use just before Cronemeyer took his vacation, on September 5, 1902. The proof is satisfactory that Cronemeyer's catcher worked well until the disks were worn down, and his patent was applied for on September 21, 1903, and granted February 9, 1904. Lewis and Williams filed their application, as we have stated, October 13, 1904; and when the testimony was taken Frease stated that he had placed over fifty of the Cronemeyer catchers in the plants of the American Sheet & Tin Plate Com-pany. It is unnecessary to review the ingenious argument of appellants' counsel that the Patent Office tribunals decided this case adversely to the appellants because their invention was not operative. We think the Commissioner appreciated that upon this interference priority of invention was the sole ques-tion to be determined, and he rightly held that the appellants failed to prove beyond a reasonable doubt that they had reduced their conception of the invention to successful practice.

The decision of the Commissioner of Patents in this case must therefore be affirmed, and the clerk of this court will certify this decision and opinion to the Commissioner of Patents in accord-ance with law.                                *Affirmed.*